**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JAMMIE SARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-CV-686-TCK-TLW** |
| | ) | |
| **OKLAHOMA DEPARTMENT** | ) | |
| **OF HUMAN SERVICES;  JOHN** | ) | |
| **DOES 1-30, unknown individuals** | ) | |
| **employed by Oklahoma Department** | ) | |
| **of Human Services,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Before the Court is the Motion to Dismiss of Defendant Oklahoma Department of Human Services ("DHS") (Doc. 11).

**I.     Factual Allegations**

Plaintiff Jammie Sartin is employed by DHS as Programs Manager and has supervisory responsibility over the professional staff.  Plaintiff is supervised by Martha Thompson ("Thompson"), DHS managing attorney for Ottawa and Delaware Counties.  In November 2014, Plaintiff informed DHS she was having knee replacement surgery on her left knee and submitted her request for leave under the Family and Medical Leave Act ("FMLA").  Thompson informed Plaintiff that, based on her general knowledge of knee replacement surgeries, she expected Plaintiff to return to work by January 2, 2015.

Plaintiff returned to work on January 12, 2015, ten days after Thompson directed.  Plaintiff alleges Thompson was angry and retaliated against her by: (1) issuing a written reprimand setting forth three performance deficiencies; and (2) requiring her to work in DHS's Jay, Oklahoma office rather than the Miami, Oklahoma office.  Working in the Jay office was not desirable to Plaintiff

because (1) it necessitated a one-hour commute each way in her personal vehicle without compensation; (2) the Jay office did not have handicap-accessible restrooms; and (3) she required physical therapy three days per week.[1]  When Plaintiff informed Thompson of these problems, Thompson continued to insist that she work in the Jay office.  Plaintiff alleges that working in Jay caused her pain, suffering, and a longer recovery period.

Plaintiff asserts six causes of action: (1) FMLA interference and retaliation; (2) Americans with Disabilities Act ("ADA") discrimination; (3) ADA retaliation; (4) violation of Oklahoma Anti-Discrimination Act ("OADA") (discrimination and retaliation); (5) negligence; and (6) intentional infliction of emotional distress ("IIED").  DHS moved to dismiss the first five claims.

## II.    Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

---

[1]  Although not explicit in the Petition, the inference is that working in Jay made it more difficult for Plaintiff to attend her physical therapy sessions.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

## III.   FMLA

The FMLA "provides that eligible employees of certain employers have the right to take unpaid medical leave for a period of up to twelve work weeks in any twelve month period for a serious health condition as defined by the Act." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 959 (10th Cir. 2002). Plaintiff asserts two types of FMLA violations -- interference and retaliation.

### A.   Interference

The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise FMLA rights, 29 U.S.C. § 2615(a)(1), and such a claim is referred to as an "interference" claim. To establish an FMLA interference claim, Plaintiff must show: (1) she was entitled to FMLA leave; (2) an adverse action by DHS interfered with her right to take FMLA leave; and (3) DHS's adverse action was related to the exercise or attempted exercise of her FMLA

3

rights. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). A denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent; therefore, the burden-shifting analysis applied to Title VII and FMLA retaliation claims does not apply to FMLA interference claims. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

Plaintiff's Petition fails to state a claim for FMLA interference because she fails to allege that any adverse action by DHS interfered with her right to take FMLA leave. Thompson, the only DHS employee named in the Petition, perhaps attempted to restrain her right to take FMLA leave by setting a precise return date. However, Plaintiff ignored this directive, took the ten additional days Plaintiff believed she needed to recover, and returned to work at that time. There is nothing to suggest Thompson interfered with or prevented Plaintiff from taking FMLA leave; instead, the gist of Plaintiff's allegations relate to Thompson's anger over Plaintiff exercising her FMLA rights in a manner Thompson deemed improper. As explained below, this states a claim for FMLA retaliation.

### B.    Retaliation

The FMLA also prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). To make out a prima facie FMLA retaliation claim, Plaintiff must show that (1) she engaged in protected FMLA activity; (2) DHS took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler*, 464 F.3d at 1171.

Plaintiff's Petition states a claim for FMLA retaliation. Plaintiff engaged in protected activity by taking FMLA leave from November of 2014 to January 12, 2015 to have knee

4

replacement surgery.  Thompson allegedly took two actions that could plausibly be deemed adverse: (1) giving Plaintiff a written reprimand; and (2) forcing Plaintiff to commute one hour each way following a knee replacement, *i.e.*, at a time when travel was difficult for Plaintiff and when Plaintiff needed frequent physical therapy.  Finally, Plaintiff has alleged facts suggesting a plausible causal connection between these adverse actions and Plaintiff's protected action under the FMLA -- namely, Thompson's anger over Plaintiff's late return date and the short lapse of time between Plaintiff's return and the adverse actions.

## IV.    ADA Discrimination

The ADA prohibits employment discrimination on the basis of an employee's disability, stating that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Plaintiff alleges:

> The Plaintiff requested and required reasonable accommodation for her disability, which was denied.  The Plaintiff experienced harassment, threats of termination of her employment, threats of loss of job position, loss of job position, and other confrontational acts creating a hostile work environment that was motivated by, or proximately, substantially-related, or directly a result of her exercising her rights under federal law.

(Pet. ¶ 42.)  The Court construes Plaintiff's second cause of action as alleging two types of ADA discrimination -- failure to accommodate and hostile work environment.

### A.    Failure to Accommodate

"Discrimination under the ADA includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose

5

an undue hardship on the operation of the business of such covered entity."  42 U.S.C. §

12112(b)(5)(A).  "To establish a prima facie case of discrimination for failing to make reasonable

accommodations, a disabled employee must show: (1) he is qualified, with or without reasonable

accommodation, to perform the essential functions of the job held or desired; and (2) he was

discriminated against because of his disability." *Valdez v. McGill*, 462 F.  App'x 814, 817 (10th Cir.

2012).  A reasonable accommodation "may include . . . job restructuring, part-time or modified work

schedules, reassignment to a vacant position, acquisition or modification of equipment or devices,

appropriate adjustment or modifications of examinations, training materials or policies, the provision

of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111(9).

Plaintiff has alleged the existence of a disability -- namely, left knee problems necessitating

a knee replacement.  The Petition contains facts plausibly suggesting that: (1) assuming traveling

to Jay was an essential function of her job, Plaintiff requested the accommodation of being permitted

to work in Miami; (2) Plaintiff could have performed her job with the accommodation of being

permitted to work in Miami; and (3) DHS discriminated against her on the basis of disability by

refusing to grant this accommodation.  This is sufficient to state a claim for relief.

## B.      Hostile Work Environment

Hostile work environment claims brought under the ADA are analyzed using the standards

applied to similar claims brought under Title VII.  *Lanman v. Johnson Cty., Kan.*, 393 F.3d 1151,

1156 (10th Cir. 2004) (explaining "parallel purposes and remedial structures" of Title VII and the

ADA in holding that hostile work environment claim is actionable under ADA); *Campbell v.

Wal–Mart Stores, Inc.*, 272 F. Supp. 2d 1276, 1292 (N.D. Okla. 2003) (applying Title VII standards

to ADA hostile work environment claim).  Extrapolating from Title VII, the elements of an ADA

hostile work environment claim are: (1) the plaintiff is a member of a protected group, *i.e.*, he is "disabled" within the meaning of the ADA; (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (elements of sexually hostile work environment claim).

Plaintiff has alleged facts supporting the first, second, and fourth elements by alleging a knee disability and that Thompson subjected her to unwelcome harassment, including issuing her an unwarranted written reprimand and requiring her to commute to Jay. However, Plaintiff has failed to allege facts stating any plausible causal connection to her disability. As explained above, the facts sufficiently allege Thompson took adverse actions in retaliation for Plaintiff exercising her FMLA rights in a certain manner. However, this is distinct from harassing Plaintiff based on her knee problems. The allegations of causation, as related to the ADA hostile work environment theory, are conclusory and merely that Plaintiff experienced harassment as a "result of exercising her rights under federal law." (Pet. ¶ 42.) Assuming Plaintiff means exercising her right to request a reasonable accommodation under the ADA, there are no allegations (other than legal conclusions) suggesting Plaintiff's request for accommodation prompted or somehow caused the alleged hostile work environment. Thompson required Plaintiff to travel to Jay and allegedly took other adverse actions before Plaintiff ever requested an accommodation. Plaintiff's Petition fails to state any plausible claim that Plaintiff suffered a hostile work environment based on her knee disability. *See Jurczyk v. Coxcom, LLC*, No. 14-CV-454-TCK-FHM, 2016 WL 3248417, at *9 (N.D. Okla. June 10, 2016) ("While some cases may involve enough evidentiary overlap to reach a jury on both ADA

and FMLA claims, the only potential discrimination supported by Plaintiff's evidence is based upon her use of the FMLA, not based upon any disability for which she qualifies under the ADA.").

V.      **ADA Retaliation**

For the same reasons explained above in relation to the ADA hostile work environment claim, Plaintiff has failed to allege facts stating a claim for ADA retaliation. Specifically, the facts fail to allege or support an inference that there is any causal connection between protected activity under the ADA and the adverse employment actions alleged in the Petition. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (ADA retaliation claim requires "a causal connection existed between the protected activity and the materially adverse action").

VI.     **OADA**

DHS argues for dismissal of Plaintiff's OADA claim because Plaintiff makes a passing reference to *Burk v. K-Mart Corporation*, 770 P.2d 24, 29 (Okla. 1989). (*See* Pet. ¶ 55 ("[T]he Plaintiff has suffered compensable injuries under the OADA and its enumerated public policy under *Burk* . . . ."). Defendant is correct that the Oklahoma Legislature amended the OADA to eliminate the common-law *Burk* tort in employment-discrimination cases effective November 1, 2011. Okla. Stat. tit. 25, § 1350(A) ("A cause of action for employment-based discrimination is hereby created and any common law remedies are hereby abolished."). However, Plaintiff clarified in her response that she "is not seeking a common law remedy" and that "the inclusion of the Burk reference [was] merely to provide the Court the nature of the remedy she seeks for violation of the OADA." (Pl.'s Resp. 12.) This claim shall proceed under the OADA, and dismissal is not warranted.

8

## VII.    Negligence

Plaintiff alleges DHS breached duties owed to Plaintiff by "negligently failing to sufficiently and properly hire, train, supervise, monitor, and retain its employees" and by "negligently failing to follow proper policies and procedures, or by failing to adopt/enact the same, to protect employees such as the Plaintiff from harm inflicted by her coworkers." (Pet. ¶¶ 58-59.) This Court has expressly held that section 155(5) of the Oklahoma Government Tort Claims Act, known as the discretionary function exemption, "shields political subdivisions from liability for negligent supervision and training claims." *White v. City of Tulsa, Okla.*, No. 13-CV-128-TCK-PJC, 2013 WL 4784243, at *5 (N.D. Okla. Sept. 5, 2013). This exception also shields political subdivisions from tort liability for enforcement, adoption, or failure to adopt rules or policies. *See Burns v. Holcombe*, No. 09–CV–152–JHP, 2010 WL 2756954, at *13 (E.D. Okla. July 12, 2010). Although Plaintiff argues a factual record is necessary to make the determination of whether the decisions were discretionary or operational, all allegations clearly describe negligence that is covered by the discretionary function exception. Accordingly, DHS is shielded from tort liability under the GTCA.

**VIII.   Conclusion**

The Motion to Dismiss of Defendant Oklahoma Department of Human Services (Doc. 11)

is GRANTED in part and DENIED in part as follows:

First Cause of Action - FMLA: GRANTED as to interference. DENIED as to retaliation.
Second Cause of Action - ADA Discrimination: DENIED as to failure to accommodate.  GRANTED as to hostile work environment.
Third Cause of Action - ADA Retaliation: GRANTED.
Fourth Cause of Action - OADA: DENIED.
Fifth Cause of Action - Negligence: GRANTED.[2]

**SO ORDERED this 1st day of August, 2016.**

**TERENCE KERN**
**United States District Judge**

---

[2]  DHS did not move for dismissal of the sixth cause of action.