## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMMIE SARTIN, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 15-CV-686-TCK-tlw |
| OKLAHOMA DEPARTMENT OF HUMAN SERVICES; JOHN DOES 1-30, unknown individuals employed by Oklahoma Department of Human Services, | ) |
|       Defendants. | ) |

### OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendant Oklahoma Department of Human Services ("DHS") (Doc. 37).[1]

On August 1, 2016, the Court: (1) dismissed Plaintiff's claim for interference under the Family and Medical Leave Act ("FMLA") but permitted Plaintiff's claim for FMLA retaliation to proceed; (2) dismissed Plaintiff's claim for hostile work environment under the Americans with Disabilities Act ("ADA") but permitted Plaintiff's claim for ADA discrimination to proceed; (3) dismissed Plaintiff's claim for ADA retaliation; (4) permitted Plaintiff's claims under the Oklahoma Anti-Discrimination Act ("OADA") to proceed consistent with the federal claims; and (5) dismissed Plaintiff's claim for negligence. Plaintiff has now voluntarily dismissed her sixth cause of action for intentional infliction of emotional distress. (Doc. 29.) Therefore, the only remaining claims are:

---

[1] Defendants John Does 1-30 were never identified or served with process. Nor are they mentioned in Plaintiff's briefing. Claims against these Defendants shall be dismissed without prejudice.

(1) FMLA retaliation; (2) ADA discrimination; and (3) OADA claims.  DHS moves for summary judgment on all remaining claims.[2]

## I.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id*.  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## II.    Factual Background

The following facts in the summary judgment record are either undisputed or resolved in favor of Plaintiff.  Plaintiff Jammie Sartin has been employed by DHS for fifteen years and remains employed there.  At times relevant to her lawsuit, Plaintiff was employed as a Programs Manager and supervised the professional-level staff at two Oklahoma DHS offices – one located in Miami, Oklahoma, and another located approximately a one-hour drive away in Jay, Oklahoma.  Plaintiff considered the Miami office her main office and, at relevant times, only supervised one employee

---

[2] The Court's Order ruling on DHS's motion to dismiss (Doc. 29) is incorporated herein by reference.

in Jay. Beginning in mid-2014, Martha Thompson ("Thompson"), Plaintiff's supervisor, began requiring Plaintiff to travel to the Jay office at least twice a week and sometimes more. In Plaintiff's "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" signed on October 14, 2014, Plaintiff described her "official job functions" as "[]overseeing daily operations of 2 offices 72 miles round trip several times per week, handling finance update for both offices." (Ex. 3 to Def.'s Mot. for Summ. J.) Thompson supervised Plaintiff from June of 2001 until April 30, 2016, when Thompson retired. Thompson was the only local DHS employee at a management level above Plaintiff at the Miami and Jay offices.

In October of 2014, Plaintiff informed Thompson that she had scheduled knee replacement surgery for December 1, 2014 and would require leave. According to Plaintiff, Thompson originally exhibited hostility toward a six-week leave period and told Plaintiff that five weeks should be sufficient. However, it is undisputed that Thompson approved Plaintiff's request for six weeks of leave quickly after Plaintiff made her request.

Prior to the surgery date, Thompson and Plaintiff discussed what tasks Plaintiff needed to complete prior to her leave and how those tasks would be covered in her absence. According to Plaintiff, she completed the tasks expected of her prior to her leave, including certain finance duties in the Jay office.

Plaintiff's doctor released her to return to "regular duty" on January 12, 2015 with no restrictions, including no driving restrictions. On January 12, 2015, Plaintiff returned to work. According to Plaintiff, the following events transpired upon her return:

> When I returned from medical leave Thompson was hateful and angry towards me and right off instructed me to go to Jay OKDHS Office to clean up a 'mess' I supposedly left prior to taking leave. I explained to her that driving nearly one hour each way to and from work was impeding my healing but Thompson refused to

> acknowledge my needs. . . . . After returning to work on January 12, 2015, I worked in the Jay OKDHS office for 10 days in January and 2 days in Norman, Oklahoma. I worked similar work schedules in February through June 2016 working several days in Jay and other days working in other OKDHS locations such as in the Tulsa OKDHS offices. I repeatedly informed Thompson how much pain I was suffering and that driving from Miami Oklahoma to Jay Oklahoma was making the pain worse. On one occasion, we discussed how each needed to travel to the Jay OKDHS Office in Thompson's office while she sat at her desk and I stood at her door. After Thompson told me she was driving her own vehicle, I responded by telling Thompson I was driving my car because my vehicle did not cause me as much pain. My vehicle sat higher off the ground than the state vehicle and was easier to enter and exit. Thompson asked me if driving the state vehicle hurt my leg, to which I stated that my leg always hurts, but it also hurt my back. I did not submit travel claims because from the outset Thompson made very clear to me that I would never be reimbursed for driving my personal vehicle. I specifically requested to work in the Miami OKDHS Office in order to resolve serious staffing problems including working finance so another worker could be moved to case working. In response, Thompson told me, 'No, I need you in Jay.'

(Sartin Aff., Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J.)

On January 20, 2015, approximately ten days following Plaintiff's return from work, Thompson issued a formal written reprimand ("Reprimand") to Plaintiff on DHS letterhead, which was signed by Thompson and Karen Dale, the East Region Administrator for DHS. According to Thompson, she began the process of preparing the Reprimand before Plaintiff returned to work based on problems she discovered while Plaintiff was on leave. The Reprimand has three topics: (1) "Unsatisfactory performance" based on Plaintiff's failure to follow through on her alleged guarantee to Thompson that all the finance work for the Jay office would be complete before she left, which resulted in customer complaints and "harm to the reputation of the Jay office;" (2) "Discourteous treatment of clients, other employees, or the public in general" based on Plaintiff referring to employees in the Jay office, in mid-November of 2014, as "dumbasses;" and (3) "Conduct unbecoming a public employee" based on Plaintiff allegedly borrowing $100.00 from a subordinate employee in the Jay office. (Ex. 3 to Def.'s Mot. for Summ. J.) Plaintiff admits the

4

"dumbasses" comment but contends it was made to Thompson in a joking manner. Plaintiff contends that she did complete the finance work she guaranteed to complete prior to her leave and that the subordinate employee gave her the $100.00 rather than loaned it to her. Plaintiff believes the Reprimand was baseless and in retaliation for Plaintiff taking FMLA leave.

On March 3, 2015, Thompson initiated an email to Danita McCauley requesting replacing carpet and new paint in the Jay office, and Plaintiff was copied on the email. Plaintiff replied to all and stated: "In addition to all of the below mentioned, there needs to be handicapped support rail installed in each of the private bathrooms in the back of the building." (Ex. 11 to Def.'s Mot. for Summ. J.) The public restrooms in the Jay office, which are approximately ten to fifteen away from the private restrooms, did have a support rail.

### III.    FMLA Retaliation

The FMLA "provides that eligible employees of certain employers have the right to take unpaid medical leave for a period of up to twelve work weeks in any twelve month period for a serious health condition as defined by the Act." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 959 (10th Cir. 2002). The FMLA also prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). To make out a prima facie FMLA retaliation claim, Plaintiff must show that (1) she engaged in protected FMLA activity; (2) DHS took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). DHS challenges Plaintiffs' evidence as to the second element – namely, that she suffered any materially

adverse employment action. Plaintiff contends she suffered two adverse employment actions: (1) the Reprimand, and (2) being forced to travel to Jay.

### A.     Reprimand

"Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action." *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005). "A reprimand, however, will only constitute an adverse employment action if it adversely affects the terms and conditions of the plaintiff's employment – for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Id.*

Under Tenth Circuit case law in the Title VII and FMLA retaliation contexts, written letters of warning or reprimands are generally not deemed materially adverse employment actions where the record evidence establishes that the employee remains employed and/or that the reprimand has not adversely affected her in any manner. *See id.* (written warning did not constitute adverse employment action where plaintiff had already been offered another position and resigned at time written letter was issued); *Tapia v. City of Albuquerque*, No. 05-2028, 2006 WL 308267, at * 4 (10th Cir. Feb. 10, 2006) (letter of instruction did not constitute adverse employment action where plaintiff continued to work for defendant after receipt of letter, and the "unrealized threat" that plaintiff could be disciplined for future infractions was not enough to make letter itself adverse action); *Rennard v. Woodworker's Supply, Inc.*, No. 03-8031, 2004 WL 1260309, at * 10 (10th Cir. June 9, 2004) (written reprimand did not constitute adverse employment action where reprimand stated that future infractions could result in termination but it was undisputed that defendant took no further action against plaintiff); *Young v. White*, 200 F. Supp. 2d 1259, 1274 (D. Kan. 2002) (written reprimand

did not constitute adverse employment action in the absence of evidence that reprimand had any negative effect on plaintiff's employment and plaintiff remained employed by defendant three years after reprimand). *Accord Summerlin v. M & H Valve Co.*, 167 F. App'x 93, 96 (11th Cir. 2006) ("The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result."); *Langenbach v. Wal-Mart Stores, Inc.*, 988 F. Supp. 2d 1004, 1018-19 (E.D. Wis. 2013) (holding that reprimands did not constitute adverse employment actions in retaliation claim where plaintiff did not show "any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities").

The Reprimand here does not rise to the level of an adverse employment action for purposes of an FMLA retaliation claim. Plaintiff remains employed in the same position and has not presented evidence of any lost promotions, additional discipline, or other problems the Reprimand caused her. Plaintiff took the corrective actions recommended in the Reprimand regarding finance work in the Jay office. Based on these facts, the Reprimand has caused Plaintiff no harm to date. Further, there is little possibility that the Reprimand will adversely affect Plaintiff in the future. Over two years have elapsed since the Reprimand was issued, and Thompson no longer supervises Plaintiff because Thompson retired.

    **B.**    **Travel to Jay**

The undisputed summary judgment evidence establishes that Plaintiff's job required frequent travel to Jay both before and after she took FMLA leave. On her FMLA certification form, Plaintiff herself described her position as managing two offices. Therefore, even assuming a forced commute could in some circumstances be deemed an adverse employment action, it was not adverse in this

case because it was a job requirement both before and after Plaintiff took FMLA leave. For the same reasons, a reasonable factfinder could not find any causal connection between Plaintiff taking FMLA leave and Plaintiff having to travel to Jay. Plaintiff had to make this trip on a frequent basis both before and after her knee surgery, and there is no evidence this decision was based on retaliatory animus.

## IV.    ADA Discrimination - Failure to Make Reasonable Accommodation

The ADA prohibits employment discrimination on the basis of an employee's disability, stating that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination under the ADA includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

With respect to her ADA discrimination claim, Plaintiff's brief does not clarify what precise accommodations were requested and refused. In a short section of her response brief, Plaintiff argues: (1) "Plaintiff made clear she needed to work at her home office" and yet "Thompson insisted that Plaintiff commute more than an hour" to the Jay office; (2) Plaintiff drove her own vehicle to Jay due to pain and yet "Thompson refused to assist Plaintiff via reimbursement for her travel costs or her additional meal costs resulting from being on the road [sic] extra two hours per day (10 extra hours per week)"; and (3) Defendant failed to provide a handicap-accessible restroom

in Jay. (Pl.'s Resp. to Def.'s Mot. for Summ. J. 20-21.) Construed favorably to Plaintiff, there are three possible accommodations at issue: (1) changing Plaintiff's job duties to work exclusively in Miami; (2) covering expenses for driving Plaintiff's personal vehicle to Jay; and (3) providing a handicap-accessible employee restroom in Jay.

With respect to all three theories, DHS moves for summary judgment because, *inter alia*, Plaintiff failed to make an adequate request and failed to place DHS on notice of her desire to begin the interactive process. In order to trigger the employer's duty to make a reasonable accommodation, or to engage in the interactive process with the employee to determine what might be a reasonable accommodation, the employee "must make an adequate request, thereby putting the employer on notice." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). "Although the notice or request does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' it nonetheless must make clear that the employee wants assistance for his or her disability." *Id.* "That is, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.*

### A. Working Exclusively in Miami

In her affidavit, Plaintiff stated: "I specifically requested to work in the Miami OKDHS Office in order to resolve serious staffing problems including working finance so another worker could be moved to case working. In response, Thompson told me, 'No. I need you in Jay.'" (Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., at ¶¶ 20-22.) This is not a request for a reasonable accommodation under the ADA and does not clearly or directly state that Plaintiff desired a change in her job responsibilities due to her knee pain. Nor is there any other record evidence indicating that Plaintiff made clear to Thompson that she wanted to work exclusively in the Miami office due

9

to pain she experienced following her knee surgery. The Court finds no question of fact for trial and finds that Plaintiff's own testimony evidences that she did not make an adequate request for this accommodation as a matter of law.

### B. Restroom in Jay

With respect to the private restroom in Jay, Plaintiff relies on an email initiated by Thompson making general maintenance requests, to which Plaintiff replied to all stating that handicap rails needed to be installed in the private bathrooms. Read in context, this email exchange cannot reasonably be construed as a request by Plaintiff for a reasonable accommodation. Plaintiff does not mention her personal need for the handrail or her disability in any manner. As indicated in the signature line of her email, Plaintiff was responding as a "Programs Manager, Child Support Services, Miami/Jay." This communication could not be construed as a personal request for an ADA accommodation that would trigger the interactive process.

### C. Reimbursement for Travel to Jay

Plaintiff's EEOC Intake Questionnaire asked her to "[d]escribe the changes or assistance that [she] asked for." Plaintiff's complete response to that question was:

> "I didn't actually ask, but I explained that I needed to be able to drive my own vehicle as it is higher from the ground than out (sic) state provided vehicle and does not hurt me as bad to get in and out of. I have driven my own vehicle ever since but I an (sic) not able to file for mileage reimbursement because the state car is available for me to drive."

(Ex. 9 to Def.'s Mot. for Summ. J.) In her deposition, Plaintiff stated:

> Question (by Ms. Pederson). "So is it correct to say that the - - the problem was not that you shouldn't drive at all? In your view the problem was the difference in the two cars?"
> Answer (by Ms. Sartin). "A lot of it."
> Question. "Did you ever tell Martha Thompson that you were - - that you were uncomfortable in the state Impala?"

10

> Answer. "Yes"
> Question. "Do you remember when you had that conversation?"
> Answer. "In January of 2015. I don't remember the exact date. But I told her I could not drive the state car, it hurts me to get in and out of it."
> Question. "What did she say?"
> Answer. "It hurts your leg? And I said, my knee always hurts, by it also hurts my back."
> Question. "Did you ask her to do anything about that?"
> Answer. "Shouldn't have had to."
> Question. "Well, did you tell her what you wanted?"
> Answer. "I told her I had to drive my car because I can't get in and out of the state car."
> Question. "Did you tell her anything like you thought you should be reimbursed for using your car?"
> Answer. "I believe it was implied. She went to great lengths to educate the office on not driving their personal vehicles because the state couldn't afford to pay mileage. Even had it added to a staff meeting later in the year. I did not ask her specifically if I could use my car and be compensated. But I believe it was implied that I would like to use my vehicle and still be compensated, since I was being forced to work in the Jay office five days a week, three to five days a week."

(Sartin Dep. 38:9-39:18.) In her affidavit, Plaintiff stated that she "did not submit travel claims because from the outset Thompson made very clear to me that I would never be reimbursed for driving my personal vehicle." (Pl.'s Resp. to Def.'s Mot. For Summ. J., Ex. 1 ¶¶ 20-21.)

Collectively, Plaintiff's affidavit and deposition testimony make clear that: (1) Thompson never prevented Plaintiff from driving her own vehicle to Jay and therefore "accommodated" her at least to that extent; (2) at times when the state vehicle was unavailable, Plaintiff received mileage reimbursements for use of her personal vehicle; and (3) at times the state vehicle was available, Plaintiff did not request or receive mileage reimbursements because Thompson told her it would never be granted. As an initial matter, the Court concludes that the only "accommodation" Defendant failed to provide was paying Plaintiff mileage on limited occasions when the state vehicle was available. Defendant argues this claim fails because: (1) Plaintiff never requested mileage

reimbursement; and (2) if she did, that would not have been a "reasonable accommodation" under the definition in 42 U.S.C. § 12111(9)(A)-(B).

### 1. Lack of Request

Relying on and quoting from EEOC guidelines, a court within the Tenth Circuit has held that "[a]n employer may not assert that it never received a request for reasonable accommodation, as a defense to a claim for failure to provide reasonable accommodation, if it actively discouraged an individual from making such a request." *United States v. City & Cty. of Denver*, 49 F. Supp. 2d 1233, 1241 (D. Colo. 1999). Plaintiff has created a question of fact as to whether Thompson actively discouraged and/or preemptively denied the accommodation in this case – namely, reimbursed travel in her own vehicle. Therefore, Defendant is not entitled to summary judgment on this claim based on Plaintiff's failure to make an adequate request for the accommodation.

### 2. Unreasonableness of Requested Accommodation

The regulations define "reasonable accommodation" as:

> The term "reasonable accommodation" may include – (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(A)-(B). "Ultimately the reasonable accommodation required by ADA is one that provides the disabled employee with an 'equal employment opportunity' – that is, 'an opportunity to attain the same level of performance, or to enjoy the same level of benefits and privileges of employment as are available to the average similarly situated employee without a

disability." *Merry v. A. Sulka & Co.*, 953 F. Supp. 922, 927 (N.D. Ill. 1997) (internal quotations omitted).

A jury could conclude that Plaintiff's disability required an accommodation of allowing her to travel by personal vehicle, rather than the state vehicle. However, a reasonable jury could not conclude that DHS was obligated to reimburse her for personal travel expenses. The state vehicle was the required method of travel, and the record indicates that Thompson did not permit reimbursement for any employees who drove their own vehicle (for whatever reason) when the state vehicle was available. The requested accommodation is unreasonable as a matter of law because it exceeds the benefits and privileges available to other similarly situated non-disabled employees, rather than merely equalizing the playing field. Plaintiff was able to attain an equal opportunity to perform the travel requirements of her job when she was permitted to travel to Jay in her personal vehicle. This was a sufficient accommodation for her knee pain as a matter of law.

## V.     OADA

Plaintiff concedes that protections provided by the OADA are co-extensive with her federal claims. Because the Court finds that Plaintiff cannot survive summary judgment on any of her federal claims, the Court also grants summary judgment on the OADA claims.

## VI.     Conclusion

The Motion for Summary Judgment of Defendant Oklahoma Department of Human Services (Doc. 37) is GRANTED. Claims against John Does 1-30, who were never served or named, are DISMISSED without prejudice. *See Culp v. Williams*, No. 10-CV-00886-CMA-CBS, 2011 WL 1597686, at *4 (D. Colo. Apr. 27, 2011) (dismissing claims against John Does without prejudice). The Court will enter a separate Judgment and Judgment of Dismissal.

**SO ORDERED this 17th day of July, 2017.**

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**